UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN JONES,

    Plaintiff,

-vs-

Case No. 08-13896
HON. AVERN COHN

WASHTENAW COUNTY,

    and

RYAN STUCK,

    Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is a civil rights case under 42 U.S.C. § 1983 with pendent state law claims. Defendant Ryan Stuck (Stuck) is a deputy sheriff in the Washtenaw County Sheriff's Department and defendant Washtenaw County is a municipal entity. Plaintiff Bryan Jones (Jones) generally claims that Stuck violated his constitutional rights by groping him while performing a search of his person and by performing an intrusive search of his person and vehicle without a search warrant, reasonable suspicion, or probable cause. Jones also claims Washtenaw County inadequately trained Stuck on the proper performance of his duties.

The complaint is in six counts:

    (I)    Assault and Battery;

    (II)   Violation of the Fourth Amendment, 42 U.S.C. § 1983 (Excessive Force);

(III) Violation of the Fourth Amendment, 42 U.S.C. § 1983 (Illegal Search);

(IV) Violation of the Fourth Amendment, 42 U.S.C. § 1983 (Invasion of Privacy);

(V) Gross Negligence;

(VI) 42 U.S.C. § 1983 (Failure to Train).

Now before the Court is Stuck and Washtenaw County's motion for summary judgment on the grounds that Jones lacks evidence to support his claims, that neither violated Jones' constitutional rights, and that each is entitled to federal and state governmental immunity. For the reasons that follow, the motion is granted in part and denied in part.

## II. FACTS

The facts as the Court understands them are generally as follows.

### A. The Stop

On November 21, 2006, Jones drove Marciah Embry (Embry) to a convenience store in Ypsilanti, Michigan. Stuck and an unnamed officer were also present at the convenience store. After making a purchase, Jones left the store and attempted to leave in the vehicle he was driving. At that time, Stuck and his partner stopped Jones because the license plate on Jones' vehicle, a 1995 Ford Crown Victoria, belonged to a Chevrolet Monte Carlo owned by Kirsten Kater of Ypsilanti, MI. At the same time, Stuck learned that the vehicle was registered to a Julianne Foster of Middleville, MI. Jones told Stuck that he was driving a friend's car that he borrowed. According to Jones, Stuck asked Jones for his proof of insurance, and he provided it. Stuck says otherwise.

2

### B. The Detention and Search

After the stop, Stuck detained Jones and took him to his patrol car: he says he did not formally arrest him. Stuck then performed a pat down search of Jones. The parties dispute what happened next. According to Jones, Stuck unbuckled Jones' belt and pants and conducted a grossly invasive search of his genital area. According to Stuck, Jones was wearing baggy pants and because of this he pulled Jones' pants forward and shined his flashlight down inside the pants to look for drugs: he says he did not place his hands down Jones' pants. In an affidavit, Jones' passenger, Embry, stated that she did not see "any officer put his hands inside [Jones'] pants." (Doc. 19-9). However, Embry also states in the affidavit that she "did observe the police search [Jones] with his pants down."

### C. The Vehicle Search

In addition to conducting the pat down search, a vehicle search was performed on the vehicle Jones was driving. According to Stuck, Jones initially consented to the vehicle search. According to Jones, he did not consent to the search.

The officers searched and removed everything from the glove box. The officers also searched under the seats, attempted to remove the door panel, and searched the trunk. Stuck noticed the interior door molding was falling off the vehicle, so he requested a K-9 unit to perform a narcotics sniff. The K-9 sniffed the entire vehicle, including the interior, and also sniffed Jones. The record is unclear as to whether the K-9 search resulted in a positive alert.

The vehicle was later impounded. Prior to the impoundment, Stuck assisted in performing an inventory search of the vehicle pursuant to a Washtenaw County policy.

(Doc. 19-10). No drugs or illegal substances were found in the vehicle or on Jones.

### D. The Charges Against Jones

Jones later pled guilty to an improper plate misdemeanor, and a default judgment was entered against him on a no proof of insurance ticket.

### III. LEGAL STANDARD

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

However, "[a]lthough the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading . . . a verified complaint or additional affidavit . . . satisfies the burden of the nonmovant to respond." Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir.

4

2001) (quoting Fed.R.Civ.P. 56(c)). In other words, "[s]ummary judgment is appropriate 'if the pleadings . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id.

## IV. THE LAW

### A. § 1983 Claim: Illegal Search

#### 1. Terry Stop

A police officer may briefly stop an individual for investigation if the officer has reasonable suspicion that the person has committed a crime. Terry v. Ohio, 392 U.S. 1, 27 (1968). "An ordinary traffic stop is more 'akin to an investigative detention rather than a custodial arrest.'" Weaver v. Shadoan, 340 F.3d 398, 406 (6th Cir. 2003) (quoting United States v. Hill, 195 F.3d 258, 264 (6th Cir.1999)). "The existence of reasonable suspicion must be viewed in the totality of the circumstances. Id. (internal citations omitted). "This means that a court 'must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately.'" Id. (quoting United States v. Smith, 263 F.3d 571, 588 (6th Cir.2001)). "Moreover, it is well-settled that the legality of a traffic stop is not dependent upon an officer's subjective intentions." Id. (citing Whren v. United States, 517 U.S. 806, 813 (1996)).

#### 2. Terry Pat-Down

"[A] police officer may conduct a limited search for concealed weapons, if the officer believes that a suspect may be dangerous." United States v. Walker, 181 F.3d 774, 778 (6th Cir. 1999). "In Minnesota v. Dickerson, 508 U.S. 366 (1993), the Supreme

5

Court held that police may seize non-threatening contraband detected by touch during a protective pat-down search if the search stays within the bounds marked by Terry." Walker, 181 F.3d at 778.

As to the scope of a Terry pat-down, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." Id.; see also Weaver v. Shadoan, 340 F.3d 398, 409 (6th Cir. 2003) (quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)). However, the Fourth Amendment requires that an officer have probable cause to go beyond a person's outer layers in order to protect against "excessively speculative seizures." Walker, 181 F.3d at 779 (describing the scope of a Terry pat down as analogous to the plain view doctrine).

### 3. Terry Vehicle Search

Once a vehicle is stopped, a limited Terry search is permitted if an officer has reasonable suspicion of concealed weapons. Walker, 181 F.3d at 778. "If, while conducting a legitimate Terry search of the interior of the automobile, the officer should . . . discover contraband other than weapons, he clearly cannot be required to ignore [it]." Id.

### B. § 1983 Claim: Excessive Force

A claim of excessive force in the course of making an arrest is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Marvin v. City of Taylor, 509 F.3d 234, 244 (6th Cir.2007) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)). The objective reasonableness standard of the defendant's conduct, "'depends

6

on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight.'" Grawey v. Drury, 567 F.3d 302, 310 (6th Cir. 2009)(quoting Fox v. DeSoto, 489 F.3d 227, 236 (6th Cir. 2007)). "Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." Grawey, 567 F.3d at 310.

### C. § 1983 Claim: Invasion of Privacy

"[A]n invasion of privacy exists where a matter that is publicized is one that '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" Ogle v. Hocker, 669 F.Supp.2d 795, 800 (E.D.Mich. 2009).

### D. Qualified Immunity

Because Jones seeks § 1983 relief against Stuck as a public official, Jones must also overcome Stuck's claim to qualified immunity by showing that (1) the facts alleged, taken in the light most favorable to Jones, show that Stuck's conduct violated his constitutional rights and (2) the rights were clearly established, that is, the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201–02 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted).

### E. State Law Claims

Jones asserts two state law claims, assault and battery and gross negligence.

First, under Michigan law, an assault is defined as "an attempt to commit a battery

7

or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." Grawey v. Drury, 567 F.3d 302, 315 (6th Cir.2009) (citing People v. Nickens, 685 N.W.2d 657, 661 (Mich. 2004)). A battery is defined as "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person. Id.

"'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Trethewey v. Stimac, No. 08-12156, 2010 WL 3583082, at * 8 (E.D.Mich. Aug. 9, 2010)(quoting M.C.L. § 691.1407(7)(a)).

### F. Governmental Immunity: State

To qualify for governmental immunity for an intentional tort, a state defendant-employee must establish that:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> (c) the acts were discretionary, as opposed to ministerial.

Odom v. Wayne County, 482 Mich. 459, 480 (2008). A state defendant-employee does not act with good faith when he "does not act honestly," but acts with "a wanton or reckless disregard for the rights of another." Id. at 473-74.

To qualify for governmental immunity for gross negligence, the Michigan governmental immunity statute provides:

> 1. Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

M.C.L. § 691.1407(2).

### G. Government Liability

Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), a local government may be liable as an entity when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." To find municipal liability, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Gardner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1983).

## V. Analysis

As an initial matter, Stuck asserts that he is entitled to summary judgment because Jones has not met the evidentiary burden under Fed. R. Civ. P. 56, which requires a nonmoving party to rely on more than just his pleadings to show that a material fact is in dispute or that a party is not entitled to summary judgment as a matter of law. The Court disagrees related to the search of Jones' person and agrees related to the search of Jones' vehicle.

### A. § 1983: Illegal Search and Invasion of Privacy

9

1. Search of Jones

Related to the search of Jones, Jones offers his own deposition, which describes material facts in dispute regarding Stuck's account of his search of Jones. Jones also offers Embry's affidavit, which describes material facts in dispute regarding Stucks' account of his search of Jones. Thus, because Jones has proffered an additional affidavit, that of Embry, he has satisfied the burden of the nonmovant and Stuck is not entitled to summary judgment on the grounds that Jones relied solely on his accusations. See Smith v. Campbell, 250 F.3d at 1036; Fed.R.Civ.P. 56(c).

Further, as a matter of law, Stuck is not entitled to summary judgment on the search of Jones because the search, viewed in a light most favorable to Jones, exceeded the bounds set forth in Terry v. Ohio, supra. As stated above, an officer must have reasonable suspicion that a person has committed a crime to justify a lawful Terry stop. Here, Stuck had reasonable suspicion to stop Jones because of the improper license plate, a misdemeanor in Michigan. Once the lawful traffic stop was made, Stuck continued to have reasonable suspicion of criminal activity to justify the Terry pat-down because of 1) the suspicious vehicle, due to the improper license plate and the mismatched registration and driver's license; 2) the location of the stop being in a high crime area, late at night; and 3) Jones' baggy clothing.

Following the lawful patdown of Jones, however, the Fourth Amendment required Stuck to have probable cause to conduct a more invasive search beyond Jones' outer layers of clothing. Walker, supra, at 779. Here, Stuck did not feel or see contraband, which would have given him probable cause to more invasively search Jones. Rather, Stuck claims that he had the requisite probable cause because someone "brought to [his]

attention that [the stop] might be drug related or some drug activity [might be] going on with this particular stop and person." (Doc. 19-2 p. 57). Stuck's speculation falls short of what is required under Supreme Court and Sixth Circuit jurisprudence. Thus, as a matter of law, Stuck is not entitled to summary judgment related to the search of Jones.

Likewise, Jones' invasion of privacy claim must also go forward due to the fact that the legitimacy of the scope of Stuck's search of Jones presents a genuine issue of material fact.

### 2. Search of the Vehicle

Stuck next asserts that he is entitled to summary judgment on the vehicle search issue because the evidence does not show that Stuck performed an unlawful vehicle search. Stuck is correct.

Stuck testified by deposition that he did not perform the search at issue because he was "dealing with Mr. Jones." (Doc. 21-3). Jones testified that he did not know who performed the vehicle search. (Doc. 21-2). Jones said that Stuck was there, but that another officer actually performed the search. Jones has not presented sufficient evidence to contradict Stuck's assertion such that a rational trier of fact could find for him on this issue.

Further, to the extent that Stuck was involved in the vehicle inventory search, a valid inventory search without a warrant does not violate the Fourth Amendment. See South Dakota v. Opperman, 428 U.S. 364, 372 (1976). Stuck asserts that he impounded the vehicle Jones was driving pursuant to a Washtenaw County policy and Jones has not offered any evidence to refute Stuck's claim.

Thus, Jones has not met his burden related to the vehicle search and Stuck is

11

entitled to summary judgment.

## B. § 1983 Claim: Excessive Force

Jones alleges that Stuck used excessive force by using handcuffs and intrusively searching his genitals. Related to the handcuffs claim, the Sixth Circuit has held that to prevail against a summary judgment motion, "a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing." Miller v. Sanilac County, 606 F.3d 240, 252 (6th Cir. 2010) (internal citations omitted). Here, Jones has offered no such evidence.

However, as to the allegation that Stuck used excessive force when he intrusively searched Jones' genitals, Jones has established a genuine issue of material fact related to the search of Jones. Thus, because a rational juror could find in favor of Jones if his claim proves to be true, Stuck is not entitled to summary judgment on the excessive force claim.

## C. Qualified Immunity

Since it has been determined that Jones has established facts to support a Fourth Amendment claim based on Stuck's search of Jones, to determine whether Stuck is entitled to qualified immunity, the question is "whether the right was clearly established . . . in light of the specific context of the case." Saucier, supra, at 201. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003) (internal citations omitted).

Here, the law related to the scope of a Terry search was clearly established at the time of the search of Jones. Likewise, if Jones' allegations prove to be true, Stuck was on notice that his search of Jones exceeded the bounds of a Terry search and constituted a Fourth Amendment violation. Thus, Stuck is not entitled to qualified immunity related to the search of Jones.

### D. State Claims

Jones' state law claims include assault and battery and gross negligence. Considered together, as to whether Stuck's search of Jones involved an offensive touching or reckless conduct rising to the level of gross negligence, as stated, there is a genuine issue of material fact as to the scope of the search of Jones. Thus, Stuck is not entitled to summary judgment on the state law claims of assault and battery and gross negligence.

Stuck also asserts that he is entitled to state governmental immunity. Stuck is incorrect. While Stuck's acts were undertaken during the course of his employment, if Jones' allegations are found to be true, it was not reasonable for Stuck to believe that he was acting within the scope of his authority or in good faith. Thus, Stuck is not entitled to state governmental immunity related to the state law claims of assault and battery and gross negligence.

### E. Government Liability

Finally, Jones has not proffered sufficient evidence to support the failure to train claim against Washtenaw County. As stated, under Monell, supra, a local government may be liable as an entity when "execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Jones' assertions that Washtenaw County's sporadic training and

13

<u>de facto</u> custom not to supervise its officers caused Stuck's acts are without merit. Because Jones has not shown that a Washtenaw County policy caused Stuck's actions, as required under <u>Monell</u>, Washtenaw County is entitled to summary judgment.

## VI. CONCLUSION

For the reasons stated above, Stuck's motion is GRANTED as to the illegal vehicle search claim and DENIED as to the illegal person search, invasion of privacy, excessive force, assault and battery, and gross negligence claims. Further, Washtenaw County's motion for summary judgment is GRANTED.

SO ORDERED.

      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated: November 17, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 17, 2010, by electronic and/or ordinary mail.

      S/Julie Owens
      Case Manager, (313) 234-5160